UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

PAULA L. PUSEY                                                                      PLAINTIFF

v.                                        CASE NO. 3:06-CV-429-S

UNITED PARCEL SERVICE, INC.                              DEFENDANT

### MEMORANDUM OPINION

This matter is before the court upon the motion of defendant United Parcel Service, Inc. ("UPS") for summary judgment (DN 42). Plaintiff Paula L. Pusey ("Pusey") has responded (DN 45) and UPS has replied (DN 46). For the reasons that follow, UPS' motion for summary judgment will be granted.

BACKGROUND

This action involves allegations of co-worker harassment and claims for hostile work environment based on sex and race discrimination under the Kentucky Civil Rights Act, Ky. Rev. Stat. Ann. § 344.010 *et seq.* (2005) (the "KCRA"). Pusey is a Caucasian woman who has been employed by UPS for approximately twenty (20) years. James Carter ("Carter") is an African-American man who worked for UPS from 2001 to 2007.[1] Pusey and Carter were involved in a dispute over the use of a work computer in September 2005. The confrontation was neither physical nor particularly heated. However, Pusey alleges that it marked the beginning of a campaign by Carter to harass and intimidate her that persisted for the duration of his employment with UPS.

Specifically, Pusey alleges that on September 16 Carter elbowed her in the left breast as they passed each other in a hangar aisle; Carter snickered and left the area. Pusey further alleges that same day Carter tried to lunge toward or trip her. Pusey reported the elbow incident to her manager,

---

[1] UPS terminated Carter in 2007 for misconduct completely unrelated to the matter here.

Steve Roberts. In response to the elbow incident, UPS suspended Carter without pay for thirty days.

Pusey alleges that on November 23, Carter came up to her and said, "It's good to be a black man." *Deposition of Paula L. Pusey*, p. 20. Pusey reported the incident to her supervisor, Ted Darden. Mr. Darden told Pusey that he would "look into it." *Id*. at 22-23. That same day, Mr. Darden and supervisor Tom Cissell warned Carter to stay away from Pusey. In response to the supervisors' warning, Carter filed a grievance against UPS claiming that he had not interacted with Pusey in any way, and that management had harassed him.

Pusey alleges that between November 2005 and February 2006, Carter harassed her approximately twelve to fifteen times. More specifically, Pusey alleges that Carter walked through her work area laughing and whistling, touching his arms, and announcing, "No one can touch me." *Response to Motion for Summary Judgment*, p. 4. Pusey alleges that Carter made gestures towards her and noises around her. Pusey reported these incidents to her supervisors. In response to Pusey's complaints, Aircraft Materials Manager Jack Arnold issued a letter to Carter on February 16, 2006, notifying Carter that his work schedule and overtime opportunities were being adjusted to ensure that he and Pusey would not have any contact. The letter further ordered Carter not to contact Pusey, stipulating that if for work purposes Carter needed to come within fifty feet of Pusey, then he must get permission and be accompanied by a supervisor. In response to Mr. Arnold's letter, Carter filed a grievance against UPS claiming unjust discipline.

Pusey alleges that between February 2006 and December 2007, Carter violated the fifty foot restriction approximately ten to twelve times. Pusey alleges that on each of these occasions Carter whistled, laughed, or grunted to make sure that she knew he was around. Pusey further alleges that on three occasions, Carter came "right up" to her while laughing. *Depo. of Pusey* at 33. Pusey

alleges that on another occasion, under the pretense of speaking to co-worker Jeff Matherly, Carter looked at her and said, "Well, maybe the next time I see you I'll just run you down." *Id*. at 37. Pusey reported these incidents to her supervisors. Pusey's supervisors told her that they would "take care" of the problem. *Id*. at 30. Pusey reported her problem with Carter to Human Resources, as well. Ultimately, Mr. Arnold agreed to "talk to" Carter. *Id*. at 31.

Pusey alleges that the above-mentioned disciplinary actions had no effect on Carter's behavior. Only Carter's termination brought an end to her torment; and until then she feared for her safety. Pusey alleges that her condition required her to see a doctor, and that she was prescribed medication for her stress. Pusey further alleges that on one occasion she was denied an overtime opportunity because UPS deferred to Carter's work schedule rather than uphold her rights.

Pusey alleges liability on the part of UPS for the creation of a hostile work environment based on sex and race discrimination under the KCRA.[2]

The court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.[3] Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) and (2).

DISCUSSION

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*,

---

[2] Pusey previously asserted claims for retaliation, negligent supervision, and negligent retention, as well. However, those claims have been voluntarily abandoned, *Response* at 17, and, accordingly, will be dismissed with prejudice.

[3] Pusey is a citizen of Kentucky. UPS is a Delaware corporation with its principal place of business in Georgia.

536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute also must be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

Pusey alleges that she was harassed by Carter based on her sex and race, in violation of the KCRA. The KCRA makes it unlawful for an employer to "fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race. . . [or] sex." *KRS § 344.040(1)*. Because the KCRA is modeled after, and is virtually identical to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), Kentucky Courts generally follow federal law in interpreting the KCRA. *Stewart v. Univ. of Louisville*, 65 S.W.3d 536, 539 (Ky. Ct. App. 2001); *Effinger v. Philip Morris, Inc.*, 984 F.Supp. 1043, 1045 (W.D. Ky. 1997).

A plaintiff may establish a violation of Title VII, and thereby a violation of the KCRA, by proving that discrimination based on sex or race created a hostile work environment. *See, Meritor*

*Sav. Bank v. Vinson*, 477 U.S. 57, 66, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986). To establish a prima facie case of a hostile work environment based on sex or race, a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual or racial harassment; (3) the harassment was based on her sex or race; (4) the harassment was severe or pervasive; and (5) the employer is vicariously liable. *Clark v. United Parcel Service, Inc.*, 400 F.3d 341, 347 (6th Cir. 2005) (sex harassment); *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999) (race or religion harassment); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (hostile work environment created by harassment that is "sufficiently severe or pervasive to alter the conditions of the victim's employment").

UPS does not dispute that Pusey is a member of a protected class, or that she was subjected to unwelcome harassment. However, even assuming without deciding that Pusey was subjected to severe or pervasive harassment, UPS cannot be held vicariously liable here because Pusey has failed to show that she was harassed based on her sex or race. "A hostile work environment claim is cognizable only if the purported harassment, viewed in conjunction with all of the circumstances, occurred because of the employee's protected status." *Michael v. Caterpillar Fin. Serv. Corp.*, 496 F.3d 584, 600 (6th Cir. 2007).

A hostile work environment plaintiff need not prove that every incident of harassment is accompanied by some sort of declaration of sex or race bias. The purported harassment need not be of the type of unwanted sexual overtures or hate speech. However, a hostile work environment plaintiff must prove cause-in-fact that the pattern of harassment is motivated by sexual or racial animus. She must show that "but for the employee's sex [or race], [the employee] would not have been the object of harassment." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

Pusey has failed to show that but for the fact that she is Caucasian and/or a woman, Carter would not have harassed her.

Pusey argues that she was harassed by Carter because of her sex and race based on the facts that: (1) Carter elbowed her in the breast (sex harassment); (2) Carter made noises around her (sex harassment); and (3) Carter said to her, "It's good to be a black man" (race harassment). However, the court finds these cumulative facts unavailing in support of Pusey's contention.

As a preliminary matter, Pusey does not dispute that neither the elbow incident nor the incidents of Carter's noisemaking were sexual in nature. While the elbow incident involved Carter making physical contact with Pusey's breast, the touching was by no means "imbued with. . . sexual flavor." *Id*. Rather, as Pusey asserts, the purpose of Carter's blow was to harass and annoy, or even to hurt her. Similarly, while Carter "whistled" and "grunted" around Pusey, the noises were neither meant as wolf whistles nor catcalls. Rather, as Pusey asserts, the dual purpose of Carter's noisemaking was to draw attention to himself, and to intimidate her.

Pusey suggests that the court ought to interpret the elbow incident as a physical manifestation of what must be Carter's deep-seated anti-female animus because Carter struck her in the breast, specifically. However, there is no earthly evidence that either the elbow incident or the incidents of Carter's noisemaking were motivated by animosity towards women as a group. Pusey admits that after the elbow incident Carter never touched her again. Pusey does not allege that Carter ever made overtly sexist remarks or threats to her. In fact, Carter's and Pusey's verbal exchanges were few and far between. Carter's lone specific reference to gender, "It's good to be a black man," cannot reasonably be construed as evidencing sexual animus towards women. "A trier of fact cannot infer that harassment emanated from an anti-woman bias merely because a man directed that harassment

toward a woman." *Wiseman v. Whayne Supply Co.*, 359 F.Supp.2d 579, 587 (W.D. Ky. 2004). Carter's hostility towards Pusey may well have been unprovoked and is perhaps utterly illogical. Nonetheless, there is no evidence that the animosity directed by Carter towards Pusey was anything other than personal.

Carter's statement, "It's good to be a black man," likewise constitutes Carter's lone reference to race in this matter. The sheer ambiguity of this statement – particularly delivered as it was to Pusey, devoid of any context – simply precludes the court from finding that it evidences racial animus towards Caucasians. To infer otherwise would be to read into something that is not there. A trier of fact cannot infer that harassment emanated from an anti-Caucasian bias merely because an African-American directed that harassment toward a Caucasian, either.

There is no evidence that Pusey was harassed by Carter because of her sex or race. Accordingly, UPS' motion for summary judgment will be granted.

## CONCLUSION

Because the court finds that there are no genuine issues of material fact and UPS is entitled to summary judgment as a matter of law, UPS' motion for summary judgment will be granted.

A separate order will be entered herein this date in accordance with this opinion.